**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **THE NOCO COMPANY,** ) | |
| 30339 Diamond Parkway #102 ) | |
| Glenwillow, Ohio 44139, ) | CASE NO. |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE |
| v. ) | |
| ) | |
| **SHENZHEN VALUELINK E-** ) | |
| **COMMERCE CO., LTD.,** ) | |
| 2nd Two-way ChangJiangPu, ) | |
| Heao Community, HengGang Street Office, ) | |
| Longgang Dist., Shenzhen China 518000 ) | |
| ) | |
| **SHENZHEN GOOLOO E-COMMERCE** ) | |
| **CO., LTD.,** ) | |
| 303 Room, Bantian Business Center ) | |
| Bantian Wuhe Road, ) | |
| Longgang Dist., Shenzhen China 518000 ) | |
| ) | |
| **AUKEY TECHNOLOGY CO., LTD.,** ) | |
| Room 102, Building P09, ) | |
| Huanancity Elec-Trading Center, ) | |
| Longgang Dist., Shenzhen China ) | |
| ) | |
| **SHENZHEN MEDIATEK TONG** ) | |
| **TECHNOLOGY CO., LTD.,** ) | |
| Rm. 3A-E, Qianyu Tong Bldg., ) | |
| Qingji Rd., Longhua St., ) | |
| Longhua New Dist., Shenzhen China ) | |
| ) | |
| **SHENZHEN BI TE YI TECHNOLOGY** ) | |
| **CO., LTD.,** ) | |
| 701 New Chushang Apartment, #108, ) | |
| Team 1 Shijing, Guanlan St., ) | |
| Longhua New Dist., Shenzhen China ) | |
| ) | |
| ) | |
| ) | |

**TII TRADING, INC.,**  )
13200 Brooks Drive  )
Suite F  )
Baldwin Park, CA 91706  )
  )
**GUANGZHOU UNIQUE ELECTRONICS**  )
**CO., LTD.,**  )
No. 9, Jinfa Logistics Park  )
Baiyun Lake Street,  )
Baiyun Dist., Guangzhou China 510000  )
  )
**NICE TEAM ENTERPRISE LIMITED,**  )
Flat/Rm 5A,  )
Tsuen Wan Industrial Building 59-71,  )
Wang Lung Street,  )
Tsuen Wan Hong Kong  )
  )
**SHENZHEN JIEQI DIGITAL**  )
**TECHNOLOGY CO., LTD.,**  )
406, Block 2, Jinyucheng Bldg.,  )
No. 15-1, Lane 1, Changkengqu,  )
Yangmeishequ, Longgang Shenzhen China  )
518000  )
  )
**WEI HE,**  )
#160 Hujia Village,  )
Baqiao Xi'An China 710038  )
  )
**SUBSTANBO, INC.,**  )
36 South 18th Avenue  )
Suite A  )
Brighton, CO 19958  )
  )
**And**  )
  )
**JOHN DOE BUSINESSES,**  )
  )
Defendants.  )
  )
  )

---

**COMPLAINT FOR INJUNCTIVE RELIEF AND MONEY DAMAGES**
**(JURY DEMAND ENDORSED HEREON)**

---

Plaintiff The NOCO Company ("***NOCO***"), by and through counsel, for its Complaint against Defendants states as follows:

## PRELIMINARY STATEMENT

1.      NOCO files this action for injunctive relief and monetary damages because unscrupulous actors have manipulated the popular United States internet e-commerce platform Amazon.com (the "***Amazon Marketplace***") in order to gain market share, divert revenue, and harm their competition, including NOCO.

2.      The first 11 Defendants named above (the "***Merchant Defendants***") compete with NOCO for market share in the sale of jump starters on the Amazon Marketplace.

3.      On information and belief, the Merchant Defendants contract or otherwise associate with unknown Defendants John Doe Businesses (the "***Service Defendants***" and collectively referred to with the Merchant Defendants as "***Defendants***") that operate in the growth industry of "click farms," "false product ratings and reviews," and "safety takedowns" on the Amazon Marketplace. The Service Defendants assist the Merchant Defendants in manipulating the Amazon Marketplace.

4.      The Defendants manipulate the Amazon Marketplace and harm NOCO when they:

> i.      Manipulate Amazon.com, Inc.'s algorithms, which determine the product that will receive the "Amazon's Choice" Badge, such that Merchant Defendants' products receive the "Amazon's Choice" Badge—ensuring that NOCO does not receive the "Amazon's Choice" Badge—so as to increase Merchant Defendants' sales and revenue and harm competition in the market;

ii.   Author, solicit, or obtain false product reviews and ratings on NOCO's and other competitors' products;

iii.  Falsely claim to have obtained valuable certifications related to compliance with industry safety standards;

iv.   Abuse the infrastructure of the Amazon Marketplace to drive up advertising costs through the use of click farms; and

v.    Conspire together to increase Merchant Defendants' sales and harm competitors, including NOCO.

## NATURE OF THE ACTION

5.      This is an action for: (i) violations of the Lanham Act, 15 U.S.C. § 1125, banning deceptive advertising and unfair trade practices; (ii) violations of Ohio's ban on deceptive trade practices, codified at O.R.C. Chapter 4165 *et seq.*; (iii) tortious interference with business relationships; (iv) trade libel; and (v) common law civil conspiracy.

## PARTIES

6.      NOCO is a family operated and privately held corporation formed and existing under the laws of the State of Ohio with a principal place of business located in Glenwillow, Cuyahoga County, Ohio.

7.      NOCO is a global leader in consumer electronics for vehicles and is in the business of designing and manufacturing, among other products, premium battery chargers, jump starters, and other portable power devices, used primarily in the aftermarket.

8.      Merchant Defendants are business entities that are organized under the laws of, and headquartered in, China, excluding Wei He, Tii Trading, Inc., and

Substanbo, Inc., who are a Chinese-located individual, a California corporation, and a Colorado corporation, respectively.

9.     All Merchant Defendants sell jump starters on the Amazon Marketplace and compete with NOCO.

10.    Shenzhen Valuelink E-Commerce Co., Ltd. ("*DB Power*") sells jump starters under the DB Power brand on the Amazon Marketplace.

11.    Shenzhen Gooloo E-Commerce Co., Ltd. ("*Gooloo*") sells jump starters under the Gooloo brand on the Amazon Marketplace.

12.    Aukey Technology Co., Ltd. ("*Tacklife*") sells jump starters under the Tacklife brand on the Amazon Marketplace.

13.    Shenzhen Mediatek Tong Technology Co., Ltd. ("*BeatIt*") sells jump starters under the BeatIt brand on the Amazon Marketplace.

14.    Shenzhen Bi Te Yi Technology Co., Ltd. ("*LEMSIR*") sells jump starters under the LEMSIR brand on the Amazon Marketplace.

15.    Tii Trading, Inc. ("*Bolt Power*") sells jump starters under the Bolt Power brand on the Amazon Marketplace. Bolt Power is incorporated under the laws of the State of California and has its principal place of business in California as well.

16.    Guangzhou Unique Electronics Co., Ltd. ("*Audew*") sells jump starters under the Audew brand on the Amazon Marketplace.

17.    Nice Team Enterprise Limited ("*Imazing*") sells jump starters under the Imazing brand on the Amazon Marketplace.

18.     Shenzhen Jieqi Digital Technology Co., Ltd. ("*TopVision*") sells jump starters under the TopVision brand on the Amazon Marketplace.

19.     Wei He ("*Yaber*"), an individual person located in China, sells jump starters under the Yaber brand on the Amazon Marketplace.

20.     Substanbo, Inc. ("*TrekPow*") sells jump starters under the TrekPow brand on the Amazon Marketplace. TrekPow is incorporated under the laws of the State of Colorado with its principal place of business in Massachusetts while the TrekPow brand is located in Colorado.

21.     Merchant Defendants unfairly compete with NOCO on the Amazon Marketplace by: (i) manipulating Amazon.com, Inc.'s algorithms that award the Badge; (ii) creating false product reviews, ratings, and descriptions; and (iii) using Service Defendants' services to drive up NOCO's costs on the Amazon Marketplace.

22.     Defendants John Doe Businesses (the "*Service Defendants*"), identities unknown, are entities of which the true names, identities, and addresses are currently unknown and could not be ascertained despite the exercise of due diligence.

23.     Upon information and belief, the Service Defendants are engaged in the practice of offering services to companies selling on the Amazon Marketplace, including: (i) click-farm services as a way to manipulate internet traffic and drive up costs associated with advertising on the Amazon Marketplace; (ii) false product review and rating services that disparage products and mislead consumers; and (iii) safety takedowns that force Amazon to remove a product from the Amazon Marketplace.

## SUBJECT MATTER JURISDICTION

24.     This Court has jurisdiction over the subject matter of this action under

28 U.S.C. § 1331. Specifically, NOCO brings claims against Defendants for violations of

federal unfair competition and advertising laws under the Lanham Act, 15 U.S.C.

§ 1125. This Court, therefore, has supplemental jurisdiction of all state law claims

under 28 U.S.C. § 1367.

## PERSONAL JURISDICTION AND VENUE

25.     This Court has personal jurisdiction over all Defendants.

26.     The Merchant Defendants are subject to personal jurisdiction in this

Court. Merchant Defendants market and sell their products to residents of the forum

and therefore direct their deceptive and disparaging Amazon Marketplace activities

and anticompetitive conduct to the United States and the State of Ohio.

27.     NOCO competes with the Merchant Defendants in the State of Ohio on

the Amazon Marketplace. Further, residents in the State of Ohio purchase the products

the Merchant Defendants offer through the Amazon Marketplace.

28.     Merchant Defendants intentionally list, market, and sell their products to

United States consumers through the Amazon Marketplace.

29.     The domain Amazon.com, which hosts the Amazon Marketplace, is

specific to the United States and specifically targeted at, designed for, and exclusively

available in the United States.

30.     Amazon itself acknowledges and warns prospective sellers that listing on the Amazon Marketplace subjects sellers, such as Merchant Defendants, to United States tax, legal, and regulatory considerations.

31.     Listings on other countries Amazon.com, Inc.'s ("**Amazon**") marketplace, *e.g.,* Amazon.cn, Amazon.br, etc., do not populate results on the United States specific Amazon.com Amazon Marketplace.

32.     Additionally, listings do not populate on the United States Amazon Marketplace unless Merchant Defendants actively list products therein.

33.     Accordingly, by intentionally and proactively listing products on the United States Amazon Marketplace, foreign-based Merchant Defendants have engaged in overt acts directly targeting the United States market and United States consumers.

34.     Specifically, the Merchant Defendants likely ship their products to Ohio through Amazon's "Amazon Fulfillment Centers" in locations such as North Randall, Cuyahoga County, Ohio and Euclid, Cuyahoga County, Ohio. Approximately 3,700 employees operate from these "Amazon Fulfillment Centers," twenty-four hours a day and seven days a week to process, package, and ship hundreds of thousands of products.

35.     Similarly, the Service Defendants offer their click-farm and false-review services to companies utilizing the Amazon Marketplace, including but not limited to the Merchant Defendants. Through their conspiracy or otherwise concerted activity, the Service Defendants and Merchant Defendants direct their deceptive and anticompetitive conduct to residents of this forum.

36.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (c)(3).

## FACTUAL BACKGROUND

37.     E-Commerce has revolutionized how companies reach consumers in the twenty-first century.

38.     Now gone are the days where manufacturers and sellers of consumer goods can control how their products are sold to consumers by selling directly through big-box stores and self-run websites.

39.     Today, selling on the Amazon Marketplace is necessary for manufacturers and retailers to remain competitive and reach the consumer.

40.     But while Amazon has revolutionized the way a consumer receives his or her goods, its system has structural instability and the Amazon Marketplace platform is exploited and manipulated by unscrupulous actors.

41.     Defendants abuse the Amazon Marketplace and engage in deceptive and unfair practices by: (i) manipulating Amazon's algorithms that award Amazon's important and highly coveted "Amazon's Choice" Badge (the "***Badge***"); (ii) penning false product reviews and ratings; (iii) making false claims about their products in the product's description; (iv) purposefully interacting with advertisements with no intentions to purchase the advertised product; and (v) conspiring amongst each other to harm the honest companies selling on the Amazon Marketplace.

## **How the Amazon Marketplace Should Function**

42.     For a company to remain competitive in the 21st century, it must sell on the Amazon Marketplace. *See* Emily Dayton, *Amazon Statistics You Should Know: Opportunities to Make the Most of America's Top Online Marketplace*, BigCommerce Blog (last visited: Jan. 3, 2020), https://www.bigcommerce.com/blog/ amazon-statistics/ ("Each month more than 197 million people around the world get on their devices and visit Amazon.com. That's more than the entire population of Russia. In 2018, Amazon's share of the US ecommerce market hit 49%...this is more than Amazon's top three competitors combined, with eBay coming in at 6.6%, Apple at 3.9% and Walmart at 3.7%.").

43.     Consumers on the Amazon Marketplace use the platform's search functionality to discover products and are then directed to a product page.

44.     An example of a product page is shown below in Figure 1.



45. A company controls some content displayed on its product page, such as images, titles, descriptions, and "A+ content"[1]—but it does not control the whole page.

46. Instead, Amazon controls: (i) which product receives the Badge based on its algorithms; (ii) competing products that appear; and (iii) other companies that appear selling the same product.

47. And the product page is not static—purported consumers have some control as well—the page includes an interactive feature: a rating and review system designed to provide feedback on a product.

48. As much as the Amazon Marketplace is a market, the Badge, together with the product review and rating system, create a verification service and reference guide for consumers searching for goods on Amazon and in other retail stores. Elizabeth Weise, *That review you wrote on Amazon? Priceless*, USA TODAY (Dec. 7, 2017), https://www.usatoday.com/story/ tech/news/2017/03/20/review-you-wrote-amazon-priceless/99332602/ (explaining that "[f]ifty-five percent of shoppers start their buying research on Amazon.com…and half of all shoppers say they rely primarily on Amazon for reviews…"); *see also* Tessa Roberts, *How to Compete with Amazon in 8 Ways*, BLOOMREACH (Aug. 26, 2019) https://www.bloomreach.com/en/blog/ 2019/08/how-to-compete-with-amazon.html.

---

[1] "A+ content," as described on Amazon's Seller Central, "enables brand owners to change the product descriptions of branded [Amazon Seller Identification Number]s," which allows Merchants to describe their products in different ways. *See About A+ Content,* AMAZON SELLER CENTRAL (last visited: Dec. 30, 2019), https://sellercentral.amazon.com/gp/help/external/202102950.

## A.  The Amazon's Choice Badge

49.     In 2015, Amazon began awarding certain products an "Amazon's Choice" Badge.

50.     Amazon awards the Badge to both its own products and to other companies' products. An example of the Badge placed on one of Amazon's products is below in Figure 2.



51.     The Badge is displayed on the product page and carries the imprimatur of Amazon.

52.     The Badge is supposed to provide consumers with the comfort and security that the product is safe, reliable, and of good quality.

53.     Products that display the Badge have increased product views, more sales, and a higher conversion rate of those views into sales.

54.     A 2018 study found that "products that attain Amazon "Choice" status typically realize a sales boost of more than 3X." OC&C Strategy Consultants, *Voice Shopping Set to Jump to $40 Billion By 2022, Rising from $2 Billion Today*, Cision PR Newswire (Feb. 28, 2018), https://www.prnewswire.com/news-releases/voice-shopping-set-to-jump-to-40-billion-by-2022-rising-from-2-billion-today-300605596.html (considering the recommendation power of Amazon not just through the Amazon Marketplace but also Amazon's other services); *see also* Shane Shifflett, Alexandra Berzon and Dana Mattioli, *'Amazon's Choice' Isn't the Endorsement it Appears*, The

WALL STREET JOURNAL (Dec. 22, 2019), https://www.wsj.com/articles/amazons-choice-isnt-the-endorsement-it-appears-11577035151 ("Sellers say they covet the badge because it can boost sales. For merchants marketing low-price knockoffs and illicit products, it offers a sheen of quality.").

55.     The 2018 study went on to state that "85% of consumers [select] the products Amazon suggests." OC&C Strategy Consultants, *supra* at ¶ 54; *see also* Nicole Nguyen, *These "Amazon's Choice" Sellers Are Bribing Customers For Good Reviews*, BUZZFEED NEWS (Oct. 9, 2019), https://www.buzzfeednews.com/article/nicolenguyen/these-amazons-choice-sellers-bribe-customers-for-good.

56.     It is estimated that when a product loses the Badge, there is a 30% reduction in sales for that product. OC&C Strategy Consultants, *supra* at ¶ 54; *see also* Nicole Nguyen, *supra* at ¶ 55.

57.     The Badge has been awarded on products that: (i) regulators have raised safety concerns about; (ii) are misdescriptive; and (iii) whose listings appear to have been manipulated by sellers to get the Badge. Shane Shifflett, *supra* at ¶ 54.

58.     The Badge specifically "recommends highly rated, well-priced products available to ship immediately." *See* Figure 3 below.



*See* AMAZON.COM (last visited: Dec. 31, 2019), https://www.amazon.com/AmazonBasics-Performance-Alkaline-BatteriesCount/; *see also* David Carnoy, *How is 'Amazon's*

*Choice' chosen? Amazon won't say*, CNET (Mar. 21, 2018), https://www.cnet

.com/news/do-humans-choose-what-products-get-amazons-choice/.

59.     The Defendants are manipulating how Amazon awards the Badge in

order to increase the Merchant Defendants' jump starter market share.

60.     The Badge is being placed on inferior and unsafe products, which has led

certain United States Senators to question the practice. (*See* Senators' August 12, 2019

Letter to Amazon Regarding Amazon's Choice, attached as Exhibit A; Senators' August

29, 2019 Letter to Amazon Regarding Amazon's Choice Product Safety, attached as

Exhibit B; *see also* Alexandra Berzon, Shane Shifflett, and Justin Scheck, *Amazon Has

Ceded Control of Its Site. The Result: Thousands of Banned, Unsafe or Mislabeled

Products*, THE WALL STREET JOURNAL (Aug. 23, 2019), https://www.wsj.com/articles/

amazon-has-ceded-control-of-its-site-the-result-thousands-of-banned-unsafe-or-

mislabeled-products-11566564990).

61.     The Senators assert that the Badge is misleading consumers by

recommending inferior and unsafe products. (Exh. A; Exh. B).

62.     In its response to the Senators, Amazon represented that it utilizes

algorithms that determine which company's product receives the Badge based on "a

broad variety of factors to determine [Badge] eligibility, such as popularity, available

inventory, customer reviews and ratings, pricing, customer service contacts, return

rates, and product quality." (Amazon's September 16, 2019 Reply Letter to Senators

Menendez and Blumenthal, attached as Exhibit C).

63.    When making any purchasing decision—not just on the Amazon Marketplace but elsewhere—consumers rely on the Badge, the product's reviews, and the product's rating. *See* Weise, *supra* at ¶ 48; Nguyen, *supra* at ¶ 55.

### B.  Product Reviews and Ratings

64.    Amazon admits that part of how the Badge is awarded is through product reviews and ratings. (*See* Exh. C).

65.    A person need not purchase or use a product to review and rate a product.

66.    Any user with an Amazon account can write a narrative product review and rate a product out of 5 stars, with the best rating of 5 stars and the worst rating of 1 star.

67.    "To leave a review, a customer needs to have spent at least $50 over 12 months using a valid credit or debit card, according to Amazon's policy." Laura Stevens and Jon Emont, *How Sellers Trick Amazon to Boost Sales*, THE WALL STREET JOURNAL (July 28, 2018), https://www.wsj.com/articles/how-sellers-trick-amazon-to-boost-sales-1532750493.

68.    For an example of an authentic review, *see* Figure 4 below.



69.     If the purchase can be demonstrated, the review receives a "Verified Purchase" label, as seen above in Figure 4. "A 'verified' review means that the customer purchased the product on Amazon and didn't receive it at a deep discount." Stevens, *supra* at ¶ 67.

70.     Additionally, a consumer reading reviews and ratings can signify to the seller and other consumers that the particular review and rating was helpful ("***Helpful Reviews***"), as seen above in Figure 4.

71.     The top reviews, which are sometimes the most Helpful Reviews, are published on the product page, while the remaining reviews and ratings can be found through a hyperlink that directs the consumer to all of the product's reviews and ratings.

72.     Amazon Marketplace consumers rely on the reviews and ratings when making their purchasing decisions—not just on the Amazon Marketplace but also as

the consumers peruse through big-box retailers searching for products. *See* Greg

Magana, *Amazon rules the product search process*, BUSINESS INSIDER (Mar. 20, 2019),

https://www.businessinsider.com/online-consumers-rely-heavily-on-amazon-2019-3;

Weise, *supra* at ¶ 48.

73.     The Amazon Marketplace's review and rating system, when working as

designed, allows for a continuous loop of feedback—informing potential consumers as to

the quality and characteristics of a product, while providing information to the seller as

to how it can improve.

74.     Defendants, however, have flooded Amazon's rating and review system

with false reviews and ratings.

### C. Pay Per Click Advertising on Amazon

75.     Because Defendants manipulate the Badge and falsely review and rate

products, honest companies are left pursuing other avenues to increase revenue from

the Amazon Marketplace. One such avenue is advertisements.

76.     Companies selling on Amazon have a variety of advertising methods.

77.     One of the most popular is a pay per click ("***PPC***") advertising method,

whereby a company pays Amazon each time a shopper clicks on the advertisement.

78.     To determine the price paid per click, a company places a bid, notifying

Amazon how much they are willing to spend on each advertisement click.

79.     NOCO understands that Amazon awards the advertisement to the

highest bidder after considering a product's Expected Click Thru Rate.

80. Conversion and relevancy factors, in part, determine the product's Expected Click Thru Rate—the Badge and positive reviews and ratings increase the product's Expected Click Thru Rate.

81. A company's bid, together with the product's Expected Click Thru Rate, determine which product will receive the advertisement.

82. A company sets a daily maximum it is willing to spend on PPC advertisements.

83. For example, a company bidding $0.02 per click with a daily maximum budget of $10.00 will spend $10.00 for 500 clicks on the advertisement. For a detailed analysis of Amazon advertising statistics, *see Amazon Advertising Stats (2019 Update)*, ADBADGER (last visited: Jan. 5, 2020), https://www.adbadger.com/blog/amazon-advertising-stats/.

84. Once the daily budget is maxed out, it is understood that a company can increase the budget.

85. The PPC method limits a company's daily advertisement spending if it desires, but the PPC method and the other features detailed above, create a system open for abuse.

## The Amazon Marketplace Has Been Hacked

### A. Defendants Cause Substandard Products to Receive the Badge

86. Defendants manipulate Amazon's algorithms in order for Merchant Defendants' products to receive the Badge.

87. Defendants do this, in part, by falsely rating, reviewing, and describing products.

88. Amazon uses the false product reviews and ratings in its algorithms when determining which product will receive the Badge. (*See* Exh. C).

89. The Badge therefore recommends products that are not actually deserving of the recommendation. (*See* Exh. A; Exh. B; Berzon, *supra* at ¶ 60; *see also* Jon Emont, *Amazon's China Push Puts Consumers at Risk*, WALL STREET JOURNAL, Nov. 12, 2019, at A1, A12).

90. Consumers rely on the Badge when making their purchasing decisions on the Amazon Marketplace or elsewhere. *See* Weise, *supra* at ¶ 48.

91. Because the Badge increases sales, the unscrupulous actors, including Defendants, manipulate Amazon's algorithms so that the Merchant Defendants are awarded the Badge.

92. In so doing, Merchant Defendants are able to increase their Amazon Marketplace revenues.

93. Defendants manipulate Amazon's algorithms so that the Badge is not awarded to NOCO and other honest companies, which takes revenue away, damages their reputations, and hurts their ability to fairly compete.

**B. False Product Reviews, Ratings, and Descriptions Mislead the Consumer**

94. Part of Defendants' manipulation is the falsifying of product reviews, ratings, and descriptions.

95.     Although Amazon has guidelines regarding product reviews and ratings, Defendants have found ways to abuse the review and rating system.

96.     The Service Defendants are a part of a flourishing industry that offers false product review and rating services to companies selling on the Amazon Marketplace, including Merchant Defendants.

97.     Merchant Defendants use a variety of tactics—they: (i) engage companies, including Service Defendants, to post false product reviews and ratings; (ii) author the false product review and rating themselves; and/or (iii) incentivize the consumers to leave reviews and ratings through withholding warranties, disallowing product returns, or providing monetary incentives.

98.     Defendants offer free gifts, discounts, or money in exchange for positive reviews.

99.     An example of a consumer reviewing DB Power's 1200A 12000mAh Portable Car Jump Starter in order to receive a free gift is shown below in Figure 5.



100.    Below in Figure 6 is a review from Gooloo's 800A Peak 18000mAh SuperSafe Car Jump Starter that states that Gooloo offers free gifts in exchange for reviews.



101.    A consumer reviewing BeatIt's G18 2000Amp Peak 12V Portable Jump Starter did not know how the product performed or even if it worked, yet still left a five-star review. *See* Figure 7 below.



102.    A consumer reviewing Audew's Car Jump Starter, 1500A Peak 17000mAh 12V Car Battery Booster asked a question but still left a five-star review for the product, as seen in Figure 8 below.



103.    For an example of a Merchant Defendant's product review, specifically Imazing, where the consumer was very unhappy with the product because it did not perform, but then updated his rating after a refund was issued, *see* Figure 9 below.



RobertaG

⭐⭐⭐⭐⭐ **The Very Best Customer Service**

September 25, 2019

Verified Purchase

2nd UPDATE - I am pleased to be able to revise my review to reflect not only the quality of the product but also one of the best customer experiences I have ever had. The Customer Service Team reached out to me about 2 months ago with the offer of a replacement unit for the defective one that I had initially received. They shipped it out quickly and I received it within a few days of their initial contact.

As for the actual product, I can say that this one does not disappoint. It charges quickly and fully and was ready for action. We have had to use it twice now - once for our own car when the battery was too weak and we could not get the car out of the garage; and a second time when a neighbor called asking our help because her car had died in a parking lot. Both times it turned the car battery with ease and we were able to get the cars moving.

It comes in a very nice, compact case and fits easily in the glove box of a car. The instruction manual is very well written and easy to understand. The clamps have good spring tension and attach easily and securely to the battery posts. It is important to note also that it only takes one person to actually make it work. Once the clamps are attached and you hit the start button, there is ample time to get behind the wheel and turn the ignition. Gone are the days of 2-man jump starts.

There is a light, which is a great feature should you find yourself trying to jump start a car in the dark. And, having the extra ports for charging mobile devices (even a laptop) is very convenient for those long road trips when mobile device batteries start to lose power.

Again, I will say that I am extremely impressed with the customer service and with this handy, must-have jump starter.

1st UPDATE - Sadly, I am returning the portable jump starter. After just 2 jump starts, it would not take a charge, and is now useless. I am very disappointed that it no longer works, as I really felt it had great potential to get me out of a jam if needed.

^ Read less

8 people found this helpful

| Helpful | | Comment | Report abuse |

104.    Because no actual product purchase is required to review and rate a product, certain companies have found an angle—offering services to companies selling on the Amazon Marketplace.

105.    Using this angle, Service Defendants author negative and false reviews of a competitor's products, such as NOCO, as well as positive and false reviews of the purchasing company's products. *See* Lauren Dragan, *Let's Talk About Amazon Reviews:*

*How We Spot the Fakes*, WIRECUTTER (May 13, 2016), https://thewirecutter.com/
blog/lets-talk-about-amazon-reviews/.

106.    Some companies, including but not limited to certain Merchant
Defendants, offer incentives, i.e. future discounts or gifts, to their customers for a
positive review and rating or a negative review and rating on a competitor's product.
*See* Nicole Nguyen, *supra* at ¶ 55; Nicole Nguyen, *Her Amazon Purchases Are Real. The
Reviews Are Fake.*, BUZZFEED NEWS (Nov. 20, 2019), https://www.buzzfeednews.com/
article/nicolenguyen/her-amazon-purchases-are-real-the-reviews-are-fake ("Third-party
sellers [i.e. Merchant Defendants] know what it takes to make it on Amazon: Get good
reviews and a high search ranking. But attracting genuine customers is tough, so some
sellers use a reliable cheat—bribes. Because of Amazon's vast scale, inscrutable
algorithms, and capricious enforcement of its own rules, unscrupulous sellers and paid
shills largely get away with it.").

107.    Other companies, including Defendants, go so far as to create fake
Amazon accounts in order to leave false product reviews and ratings, mark false
reviews as Helpful Reviews, and/or disingenuously use the Helpful Review feature.

108.    As competition on the Amazon Marketplace continues to grow and
Amazon solicits international sellers, including those from China, sellers such as
Merchant Defendants have turned to other sources, such as Service Defendants, for
help. "For a range of about $30 to $180 a month, some websites…promise a certain
number of positive reviews by offering reviewers cash and discounts as
incentives…Others promise to help sellers with rivals' information." Stevens, *supra* at

¶ 67 (explaining further that "Some China-based Amazon employees have been paid off by sellers to pull confidential seller-account stats, search optimization tricks and other internal information.").

109.     Some sellers, such as Merchant Defendants, "will ship an empty box with a real tracking number to accomplices in the U.S., who then leave a positive review for the product. They'll also ship knick-knacks, like cheap watches, as a way to reward people who allow the use of their addresses." *Id.*

110.     One third-party review service charges $5.42 per review, which is higher than the $1.29 false review industry average. *Id.*

111.     To combat the flood of false product reviews and ratings, some tech-savvy consumers utilize multiple third-party software platforms that analyze product reviews and ratings.

112.     The third-party software uses an algorithm that analyzes a product's reviews and cross references the reviews with other products and other reviews authored by the same reviewer.

113.     In its research for this Complaint, NOCO tested Merchant Defendants' products using third-party software.

114.     The third-party software confirmed that Defendants are flooding the jump starter market on the Amazon Marketplace with false product reviews and ratings. *See* Table 1 below.

115.     Specifically, all Defendants have products that receive a "D" grade or an "F" grade as summarized in Table 1 and then detailed below.

| BRAND | PRODUCT | GRADE | CURRENT REVIEWS[2] | ALTERED REVIEWS[3] | DECEPTION |
|---|---|---|---|---|---|
| Audew | 1500A Peak 20000mAh Car Jump Starter | F | 276 | 30 | High Deception |
| Gooloo | 1500A Peak 20800mAh SupreSafe Car Jump Starter | F | 149 | 1,116 | High Deception |
| LEMSIR | L6 800A Peak Car Jump Starter | F | 88 | 140 | High Deception |
| BeatIt | QDSP 2200A Peak 21000mAh 12 V Portable Car Lithium Jump Starter | F | 106 | 371 | High Deception |
| Bolt Power | G33A 12V Car Jump Starter 1500A Peak Battery Booster | F | 88 | N/A | High Deception |
| DB Power | 600A Peak 18000mAh Portable Car Jump Starter | F | 2,096 | 3,435 | High Deception |
| Imazing | Portable Car Jump Starter – | F | 141 | 22 | High Deception |

[2] As of January 6, 2019.
[3] "Altered Reviews" represents the number of reviews on the product page that Amazon has altered, modified, or removed from the product.

| | | | | | |
|---|---|---|---|---|---|
| | 2000A Peak 18000mAH | | | | |
| LEMSIR | V8 QDSP 800A Peak Portable Car Lithium Jump Starter | F | 486 | 328 | High Deception |
| TopVision | 2200A Peak Car Power Bank with USB Quick Charge 3.0 | D | 1,378 | 38 | High Deception |
| LEMSIR | V2 QDSP Car Jump Starter, 1500A Peak Portable 12V Auto Battery Booster | F | 112 | 510 | High Deception |
| Tacklife | 2000A Car Jump Starter | D | 6 | N/A | N/A |
| Yaber | Jump Starter, Car Battery Jump Starter 1000A 13800mAh | F | 17 | N/A | High Deception |
| TrekPow | G39 1200A Peak 12V Battery Jumper Starter | F | 43 | N/A | High Deception |
| Yaber | 18000mAh 800A Yaber Car Battery Booster | F | 2 | 10 | N/A |

116.    What follows are specific examples of the third-party analysis that demonstrates, supports, and verifies that Defendants manipulate and abuse the Amazon Marketplace.

117.    Audew's 1500A Peak 20000mAh jump starter failed when tested and had failed on at least one previous occasion. *See* Figure 10 below.



118.    Only 22.5% of the 157 reviews for Gooloo's 1500A Peak 20800mAh jump starter are reliable and Amazon altered 1,116 reviews for the product. *See* Figure 11 below.



119.    LEMSIR's L6 800A Peak Car jump starter failed as well, and similar to Audew's tested product, LEMSIR's also failed on at least one prior occasion. *See* Figure 12 below.



120.    On BeatIT's QDSP 2200A Peak 21000mAh, Amazon altered 371 reviews and the third-party software revealed that the product's reviews, much like the other Merchant Defendants' products analyzed, have a high degree of deception. *See* Figure 13 below.



121.    Of Bolt Power's 88 reviews for its G33A 12V Car Jump Starter 1500A

Peak Battery Booster, only 21.9% are reliable, according to the third-party software.

*See* Figure 14 below.



122.    Only 15% of DB Power's 2,096 reviews for its 600A Peak 18000mAh Portable Car Jump Starter are reliable while Amazon altered 3,435 reviews. *See* Figure 15 below.



123.    Imazing received a failing grade for its Portable Car Jump Starter –
2000A Peak 18000mAh model and did so on at least one other occasion when analyzed
by the third-party software. In addition to its reviews having "high deception," only
16.7% of its reviews for the product are reliable. *See* Figure 16 below.



124.     LEMSIR's V8 QDSP 800A Peak Portable Car Lithium Jump Starter also received a failing grade—similar to its other models analyzed. *See* Figure 17 below.



125.    While TopVision's 2200A Peak Car Power Bank received a D grade, the third-party software revealed that its grade has fallen since it was last analyzed and there is "high deception involved." *See* Figure 18 below.



126.    LEMSIR's V2 QDSP Car Jump Starter, 1500A Peak Portable 12V Auto Battery Booster failed just like the other LEMSIR products analyzed, and its reviews contain a high degree of deception while 510 of its product reviews have been removed, altered, or modified by Amazon. *See* Figure 19 below.



127.    Tacklife's 2000A Car Jump Starter received a D grade but the product has only 6 reviews currently. *See* Figure 20 below.



128.    Yaber's Car Battery Jump Starter 1000A 13800mAh received an F and only 11.8% of the product's reviews are deemed reliable. *See* Figure 21 below.



129.    TrekPow's G39 1200A Peak 12V Battery Jumper Starter also received a failing grade, and the third-party software determined that only 20.0% of the product's reviews are reliable and "there is high deception involved." *See* Figure 22 below.



130. All Defendants have products that receive a "D" grade or an "F" grade. *See* Table 1. As of this filing, none of NOCO's jump starters have a "D" or an "F" grade.

131. For comparison, some of NOCO's products were also analyzed with the third-party software. *See* Table 2.

| BRAND | PRODUCT | GRADE | CURRENT REVIEWS[4] | ALTERED REVIEWS[5] | DECEPTION |
|-------|---------|-------|--------------------|--------------------|-----------|
| NOCO | Boost XL GB50 1500 Amp 12V UltraSafe Lithium Jump Start | A | 6,376 | 4,644 | Minimal Deception |
| NOCO | Genius Boost Plus GB40 1000 Amp 12V UltraSafe Lithium Jump Starter | A | 6,391 | N/A | Minimal Deception |
| NOCO | Genius G1100 6V12V 11A UltraSafe Smart Battery Charger | B | 1,111 | 4,135 | Minimal Deception |
| NOCO | Genius G15000 12V24V 15A Pro Series UltraSafe Smart Battery Charger | A | 197 | 4,815 | Minimal Deception |

---

[4] As of January 6, 2019.

[5] "Altered Reviews" represents the number of reviews on the product page that Amazon has altered, modified, or removed from the product.

| NOCO | Genius G7200 12V24V 72A UltraSafe Smart Battery Charger | A | 738 | 4,534 | Minimal Deception |
|------|------|------|------|------|------|

132.    For a more detailed view of NOCO's products tested, *see* Figures 23, 24, 25, 26, and 27, below.









133.    While Merchant Defendants' products all received D or F grades, NOCO's products received A or B grades and have "minimal deception."

134.    Most of Merchant Defendants' products analyzed have "high deception."

135.    Additionally, NOCO products have large amounts of reviews that Amazon has altered, edited, or removed.

136.    NOCO believes these reviews have been removed because they are negative false reviews that Defendants placed on NOCO products.

137.    The third-party analysis, when combined with the other information detailed herein, shows Defendants manipulate the Amazon Marketplace to harm NOCO and competition in the jump starter market.

138.    Companies, including Defendants, even create false safety concerns regarding a product, which can lead to Amazon removing the product from the Amazon Marketplace.

139.    Defendants do this by using keywords in the false reviews such as "fire," "exploded," and "blew up."

140.    Because companies have control over their product description, some companies, including Merchant Defendants, falsely describe their products, which misleads consumers.

141.    Merchant Defendants also falsely describe their products by listing the product as having received a certification trademark, which acts as a third-party's approval of a product.

142.    Merchant Defendants describe their products as having received non-party Underwriter Laboratories, LLC's ("*UL*") certification trademark for meeting UL Safety Standard 2743 that applies to Portable Power Packs, i.e. jump starters.

143.    Certification trademarks, such as UL's 2743 standard certification, promote trust and confidence to the consumer in his or her use of the product because the certification trademark certifies third-party testing and standards have been achieved. *See Most Americans Are Concerned About the Safety of Many Consumer Products-Yet Few Research Claims,* NSF INTERNATIONAL (May 16, 2019), http://www.nsf.org/newsroom/most-americans-are-concerned-about-the-safety-of-many-consumer-products (explaining that "Americans trust claims tested and certified by independent organizations more than claims made by product manufacturers and brands."); *see also Global Study Finds Peers, Consumer Reviews Now Rival Certifications As Top Sources of Trust on Product Sustainability Claims,* GLOBESCAN (May 21, 2013), https://globescan.com/global-study-finds-peers-consumer-reviews-now-rival-certifications-as-top-sources-of-trust-on-product-sustainability-claims/ (explaining that consumers rely on certification trademarks as much as consumer reviews when determining if a product is environmentally safe).

144.    When companies display a certification trademark, the company gains consumers' trust, which is a strategic asset necessary to remain competitive. Deepa Prahald, *Why Trust Matters More Than Ever for Brands*, HARVARD BUSINESS REVIEW (Dec. 8, 2011), https://hbr.org/2011/12/why-trust-matters-more-than-ev.

145.    In NOCO's experience, to properly display a UL certification trademark, a company is required to mark the product with the UL certification trademark, mark the company's control number, and denote which UL standard was tested.

146.    As seen below in Figures 28, 29, 30, 31, 32, and 33, certain Merchant

Defendants have failed to do so.







147.    The display of trust-promoting certification trademarks, such as UL's,

create a false sense of security in the consumer as to a Merchant Defendant's product.

148.    All of these tactics are used against NOCO to harm NOCO's reputation and brand, divert consumers away from NOCO products, and reduce NOCO's sales.

149.    Merchant Defendants' abuse breaks the feedback loop and manipulates the shopping experience with misleading information delivered to unwitting consumers.

150.    Instead of making an informed purchasing decision, consumers rely on false product reviews, ratings, and descriptions.

151.    Consumers use the Badge and product reviews, ratings, and descriptions to navigate the ever-expanding Amazon Marketplace and the variety of products at big-box retailers, but because of Merchant Defendants and Services Defendants, the consumers' reliance is misplaced.

152.    Defendants are defrauding consumers by: (i) manipulating Amazon's algorithms that award the Badge; (ii) creating false product reviews and ratings; and (iii) fraudulently describing their products, on the Amazon Marketplace, which in turn increases their sales to the detriment of their competitors, including NOCO.

153.    While Amazon takes steps to limit the false product reviews, ratings, and descriptions, "the tactics keep evolving," and NOCO and other honest sellers continue to be significantly harmed. Stevens, *supra* at ¶ 67.

154.    Companies, such as Merchant Defendants, are now using third-party subscription software tools that evade the Amazon Marketplace's fraud-detection defenses. Parmy Olson, *New Tactics Punch Holes in Big Tech's Ad-Fraud Defenses,* THE WALL STREET JOURNAL (Jan. 7, 2020), https://www.wsj.com/articles/new-tactics-punch-holes-in-big-techs-ad-fraud-defenses-11578418893.

155.    The new tools act as browsers that "allow for the creation of hundreds of fake personas quickly and cheaply," that creates fake traffic to online advertisements, which makes the products appear more popular than they really are. *Id.*

156.    "Fraudsters…can use the software to mimic the online browsing and shopping habits of real people. For example, they can send fake personas to visit different websites, click on various links and ads, and leave five-star reviews. Such actions could help boost popularity of an ad or product, leading to increased clicks and sales." *Id.*

157.    The tactics are evolving as ecommerce platforms, such as the Amazon Marketplace, develop new ways to combat the unscrupulous actors. *Id.*

158.    Defendants are using the tactics described herein to harm NOCO's sales and brand.

159.    Companies playing by the rules are losing market share and revenue to these unscrupulous actors, who are taking advantage of the Amazon Marketplace in order to drive-out honest companies.

### C. Click Farms Drive Up Costs and Deceive Consumers

160.    In addition to manipulating Amazon's algorithms and falsifying product reviews, ratings, and descriptions, the unscrupulous actors, including Defendants, abuse Amazon's PPC (pay per click) advertising method.

161.    Merchant Defendants and Service Defendants take advantage of Amazon's PPC advertising method through the use of click farms.

162.    A click farm is a fraudulent click service where workers are hired to fraudulently click on internet advertisements. *See* Figures 34, 35, and 36, below.







Krystal Hu, *What are click farms? A shadowy internet industry is booming in China*,

Yahoo! Finance (July 20, 2019), https://finance.yahoo.com/news/click-farms-internet-

china; Sam Carr, *What Is a Click Farm? The Quick Way to Thousands of Likes*, PPC

PROTECT (Sept. 11, 2019), https://ppcprotect.com/what-is-a-click-farm/ ("[M]any

companies and users are investing in these fake likes in the hopes of generating more

sales and increasing their exposure…Since these fake likes and followers ruin many

legitimate platforms which users rely on for honest advice, many organisations are

keen to stop this fraudulent behaviour from happening."); *see also* Brian Ashcraft,

*Inside Chinese "Click Farms"*, KOTAKU (May 17, 2017), https://kotaku.com/inside-

chinese-click-farms-1795287821.

163.     Rather than outbid a competitor and pay a higher price for the PPC

advertisement, Merchant Defendants employ a third-party, such as Service Defendants,

to click the competitor's advertisements.

164.     This has an effect of exponentially driving-up the cost of advertising with

no consumers having seen the advertisement.

165.     The click-farm workers are directed to click on the competitor's PPC

advertisement with no intention of actually purchasing the product.

166.     Amazon has, in certain circumstances, refunded NOCO's advertising costs

wrongfully incurred because of click farms, but click farms continue to affect NOCO,

the Amazon Marketplace, and the companies that use it.

167.     "The [click farms] are used to try to outsmart Amazon's automated system

that ranks some half-billion products in search results, according to interviews with

consultants and businesses engaged in these practices, as well as sellers who say they

have been approached by such businesses. It's one of an ever-rotating wheel of tricks used to game Amazon's algorithms." Stevens, *supra* at ¶ 67.

168.     But, "[t]he tactics aren't thwarting Amazon's sales, which rose 39% in the second quarter [of 2018]…they threaten to undermine the integrity of one of the world's largest web marketplaces, which collects nearly half of every U.S. retail dollar spent online." *Id*.

169.     "The trickery can be seen on Amazon. A search last week for a blackhead-remover mask turned up more than a thousand options. One of the top-ranked results, labeled "Amazon's Choice," had hundreds of reviews averaging 4.3 stars. But only the first four reviews were related to the mask—the hundreds of others mostly evaluated a battery charger. The merchant, labeled by Amazon as "just launched," likely co-opted an old listing with positive reviews and changed the product's image and description to fool Amazon's algorithms, according to sellers and consultants familiar with this general practice." *Id*.

170.     The click-farm tactic has a multiplying effect—it hurts the advertiser because it saves the Merchant Defendants advertising dollars and wastes the advertiser's budget on empty clicks while increasing the Merchant Defendants' product status.

171.     Unscrupulous actors, including Merchant Defendants and Service Defendants, are interfering with a company's advertisement deals with Amazon and gaining an unfair advantage on the Amazon Marketplace.

### D. Defendants are Violating and Circumventing Amazon's Regulatory Scheme

172.    Given Amazon's global e-commerce dominance—comprising 49% of the total e-commerce market—Amazon's policies act as a global regulatory scheme for e-commerce. Dayton, *supra* at ¶ 42.

173.    Defendants abuse of the Amazon Marketplace, including: (i) manipulating Amazon's algorithms that award the Badge; (ii) falsifying product reviews, ratings, and descriptions, including offering incentives for reviews, safety takedowns, and disingenuously using the product review features; and (iii) using click farms to increase advertising costs, violates Amazon's policies that act as the global e-commerce regulatory scheme.

174.    Amazon created a "Seller code of conduct" that "all sellers are expected to adhere to…when listing products on [the Amazon Marketplace]." *Selling Policies and Seller Code of Conduct,* AMAZON (last visited: Jan. 2, 2020), https://sellercentral. amazon.com/gp/help/external/G1801?language=en_US&ref=efph_G1801_cont_G521.

175.    "All sellers must:…provide accurate information to Amazon and [Amazon's] customers at all times…not attempt to damage or abuse another Seller, their listings or ratings…not attempt to influence customers' ratings, feedback, and reviews," among other requirements. *Id.*

176.    Merchant Defendants' manipulation of Amazon's algorithms to receive the Badge violates Amazon's policies.

177.    Specifically, Amazon does not allow sellers to: (i) "[use] a third-party service that offers free or discounted products tied to a review;" (ii) "[offer] to provide a

refund or reimbursement after the buyer writes a review;" and (iii) "[use] customer accounts to write or change a review on his or his competitor's product," among other restrictions. *Customer Product Reviews Policies,* AMAZON (last visited: Jan. 2, 2020), https://sellercentral.amazon.com/gp/help/YRKB5RU3FS5TURN?language=en_US&ref= xx_YRKB5RU3FS5TURN_cont_G201972140.

178. Merchant Defendants have used third-parties, including Service Defendants, to falsify product reviews and ratings.

179. Merchant Defendants have also refused returns, refunds, and warranty claims unless the consumer writes a review.

180. Further, Merchant Defendants, either themselves or with Service Defendants, have created fake Amazon accounts to author product reviews.

181. Additionally, Amazon Marketplace sellers "must act fairly and lawfully and may not misuse any service provided by Amazon." *Selling Policies and Seller Code of Conduct,* AMAZON (last visited: Jan. 2, 2020), https://sellercentral. amazon.com/gp/help/external/G1801?language=en_US&ref=efph_G1801_cont_G521.

182. "Examples of unfair activities include:…artificially inflating web traffic (using bots or paying for clicks, for example)," among other examples. *Id.*

183. Merchant Defendants use Service Defendants' click farms to falsify web traffic and increase honest companies', including NOCO's, advertising costs.

184. Defendants have violated and continue to violate Amazon's global e-commerce regulatory scheme.

**The Acts of the Defendants Significantly Damage NOCO**

185.    The Amazon Marketplace is a powerful platform for NOCO.

186.    To remain competitive as a leading manufacturer, NOCO needs to be on the Amazon Marketplace.

187.    A substantial amount of NOCO's sales are derived from the Amazon Marketplace, amounting to millions of dollars per year.

188.    While the Amazon Marketplace is where NOCO generates a significant amount of its revenue, NOCO's products are in big-box retailers throughout the United States as well.

189.    NOCO directly competes with Merchant Defendants on the Amazon Marketplace and within retail stores across the country.

190.    But because Defendants have hacked the Amazon Marketplace (as more fully detailed above), NOCO's ability to fairly compete has been hindered and NOCO has been harmed as a result.

191.    Defendants abuse and manipulate the Amazon Marketplace such that the Badge is incorrectly assigned, consumers are duped into relying on false ratings, reviews, and descriptions, and NOCO pays a premium for advertising on the Amazon Marketplace.

192.    The Amazon Marketplace ecosystem, as detailed above, combined with data—as determined by every available source—proves that Defendants have manipulated and abused the Amazon Marketplace to harm NOCO.

193.    Consumers erroneously purchase the Merchant Defendants' products, which steals revenue from honest companies doing business on the Amazon Marketplace, including NOCO. *See* Magana, *supra* at ¶ 72.

### A.  NOCO is Not Awarded the Badge

194.    NOCO conducted searches on 1,605 branded terms on the Amazon Marketplace, i.e. "NOCO jump starter." The results demonstrated that the Badge is awarded roughly 19% of the time.

195.    But NOCO never received the Badge—even where the "NOCO" name is included in the search. *See* Figure 37 below.



196.    Instead, NOCO's competitors, including Merchant Defendants, received the Badge when the consumer searched specifically for a NOCO product.

197.    Similarly, when consumers search for generic terms, i.e. "jump starter," the Badge is awarded roughly 52% of the time, but never to NOCO. *See* Figure 38 below.

**GENERIC TERMS.**
**CHOICE BADGE FOR GENERIC TERMS.**
Just over 1,000 Amazon Choice Badges were awarded to ASINs with Generic Terms (e.g., "jump starter") out of 1,963 generic search terms. On average, the Amazon Choice Badge was awarded 52% of the time - NOCO owned zero branded badges.

| BRANDED TERMS | CHOICE BADGES | PERCENTAGE AWARDED |
|---|---|---|
| 1,963 | 1,035 | 52.7% |

198.     On the other hand, other companies, including Merchant Defendants, are awarded the Badge roughly 97% of the time when either generic or branded searches are performed.

199.     NOCO and other honest companies are rarely, if ever, awarded the Badge, which significantly impacts NOCO's sales. *See* OC&C Strategy Consults, *supra* at ¶ 54.

200.     NOCO does not even receive the badge when a consumer actually searches for "NOCO" on the Amazon Marketplace. *See* Figure 38 above.

201.     This data demonstrates Defendants' manipulation and abuse of the Amazon Marketplace.

202.     Consumers rely on the Badge when making purchasing decisions not just on the Amazon Marketplace but throughout the retail industry. *See* Magana, *supra* at ¶ 72; Weise, *supra* at ¶ 48.

203.     And, without the Badge, NOCO loses sales revenue. *See* OC&C Strategy Consults, *supra* at ¶ 54.

204.    The Merchant Defendants and Service Defendants have used and are using the above described tactics—manipulating Amazon's algorithms; falsifying product reviews, ratings, and descriptions; and using Service Defendants' click farms—to harm NOCO.

205.    Merchant Defendants and Service Defendants manipulate Amazon's algorithms because the Badge not only increases revenue but it also increases sales velocity, conversion rates, a brand's organic rank, and the probability of achieving Amazon's "Best Seller" badge.

### B. False Product Reviews, Ratings, and Descriptions Harm NOCO

206.    Defendants manipulate the product reviews, ratings, and descriptions to harm NOCO.

207.    Through NOCO's own research and use of third-party software, NOCO believes that the Merchant Defendants have authored false product reviews and ratings themselves, or caused them to be authored, or utilized Service Defendants, in order to disparage NOCO's products.

208.    Although NOCO has been selling on the Amazon Marketplace much longer than the Merchant Defendants, the Merchant Defendants products have more reviews of their products.

209.    NOCO believes that Defendants are using fake Amazon accounts and the Helpful Review feature to drive one-star reviews to the product page and to the forefront of a consumer's Amazon-Marketplace experience.

210.    The average number of Helpful Votes for a NOCO product is 494 per every review. This rate is 360% higher than the next competitor's product. *See* Figure 39 below.



211.    As an example, the GB40, a NOCO product, has six product reviews that appear on the product page. Four out of the six shown reviews are a one-star review, which is disproportionate to the total number of one-star reviews of NOCO products. It is believed that Defendants use the Helpful Review feature to drive the one-star reviews to the product page and therefore to the forefront of the consumer's experience with the NOCO product. *See* Figure 40 below.

| STAR RATING | NOCO | DB POWER | GOOLOO |
|---|---|---|---|
| ★★★★★ | 2 | 2 | 8 |
| ★★★★☆ | 0 | 1 | 0 |
| ★★★☆☆ | 0 | 0 | 0 |
| ★★☆☆☆ | 0 | 0 | 0 |
| ★☆☆☆☆ | 4 | 1 | 0 |

212.    Defendants manipulate Amazon's product review and rating features because it negatively impacts a consumer's view of the product, it negatively impacts a consumer's purchase decision, and it may cause a consumer to continue searching for alternatives.

213.    Ultimately, the false reviews and ratings—the disparagement—drives would-be consumers away from NOCO products on the Amazon Marketplace and within big-box retailers, which negatively impacts NOCO's sales.

214.    As more fully detailed above, Merchant Defendants display valuable UL certification trademarks on their products when in fact the Merchant Defendants are not authorized to display such a trademark.

215.    The improper display of the trust-promoting third-party certification trademark, such as UL's, harms NOCO's credibility in displaying the same, authorized certification trademark and diverts sales away from NOCO.

216.    It is further believed Defendants are creating fake Amazon accounts to leave false product reviews and ratings on Merchant Defendants' products as well as NOCO's products.

217.    The false product reviews and ratings have caused third-party software to determine that most of Merchant Defendants' products analyzed have a high degree of deception.

218.    The third-party software also revealed that Amazon altered a large number of product reviews and ratings left on NOCO's products, which is likely due to Defendants falsely reviewing and rating NOCO's products.

219.    While NOCO has 51 non-verified reviews, 504 one-time user reviews, and 118 deleted reviews, Merchant Defendants DB Power and Gooloo have staggering differences. *See* Figure 41 below.



220.    DB Power's and Gooloo's average rating of their non-verified and one-time reviews are much higher than NOCO's, which shrouds those reviews in possible deception.

221.    Beyond abusing the Helpful Votes feature and creating fake Amazon accounts, Merchant Defendants and Service Defendants take another brazen step: authoring false positive reviews on their own products.

222.    For example, in a review of DB Power's 600A portable car jump starter, Andrew was "impressed" compared to NOCO, which he claimed he purchased at the same time. NOCO reviewed this alleged transaction and found that Andrew never purchased a NOCO product. *See* Figure 42 below.



223.    DB Power also offers free gifts to consumers or withholds the product's

warranty from consumers in exchange for reviews, as detailed by multiple reviewers.

*See* Figures 43, 44, and 45 below.



224.    A TopVision consumer purchased the TopVision 2200A Peak 20800mAh

Portable Car Power Pack with USB Quick Charge 3.0, but rated the product one star

because TopVision offered a free gift for the review, in violation of Amazon's regulatory

scheme. *See* Figure 46 below.



225.    Amazon policy, as detailed above, is such that companies should not offer compensation or request compensation, including free or discounted products, in exchange for creating, modifying, or posting content to the Amazon Marketplace, *e.g.* product reviews and ratings.

226.    Defendants—in addition to authoring false product reviews and ratings, disingenuously marking reviews as Helpful Reviews, and creating fake Amazon accounts—use keywords such as "fire," "exploded," and "blew up" in their reviews, forcing Amazon to investigate and remove products from the Amazon Marketplace.

227.    A safety takedown slows down a competitor, such as NOCO, negatively impacts sales velocity, and creates an opportunity to take over Amazon's "Best Seller" badge, which increases sales similarly to the Badge and is awarded if a product is a top seller in a specific product category. *See How to Get the Best Seller Badge on Amazon*, AMZ BLOG (May 3, 2018), https://amzadvisers.com/how-to-get-the-best-seller-badge-on-amazon/.

228.    NOCO has received no less than 12 proposals from Chinese companies offering the false safety takedown service.[6]

229.    Ultimately, Defendants have used the above tactics to harm NOCO. Defendants' manipulation and falsehood causes NOCO to not receive the Badge because Amazon's algorithms factor product reviews, ratings, and returns. (Exh. C).

### C.  Click Farms Damage NOCO

230.    NOCO is forced to advertise heavily on the Amazon Marketplace to counteract Defendants' Amazon Marketplace manipulation.

231.    Over the previous three years, NOCO has experienced an increase in PPC (price per click) advertisement costs. *See* Figure 47 below, which explains the increases in cost per click (CPC) year over year since 2015.



---

[6] The safety takedown proposals were from unknown actors who could not be identified despite the exercise of due diligence.

232.    As explained above, a product's Expected Click Thru Rate, together with the bid, determine if the product will be awarded the advertisement.

233.    Because Defendants manipulate and abuse the Amazon Marketplace, Merchant Defendants' products have a higher Expected Click Thru Rate.

234.    In order to receive the advertisement, NOCO must bid more than it would otherwise be required to without Defendants' manipulation.

235.    Therefore, NOCO pays an artificial premium for Amazon Marketplace advertisements because Defendants abuse and manipulate the Amazon Marketplace.

236.    While NOCO has reported these and other abnormalities to Amazon for investigation, Amazon rarely takes these occurrences seriously.

237.    And while Amazon may on occasion acknowledge that NOCO has been overcharged due to Defendants' abuse of the PPC system, Amazon fails to proactively monitor the situation to prevent such activity or take action to remedy the situation after the fact.

238.    Because of the Merchant Defendants' use of Service Defendants' click farms, NOCO pays a false premium for advertisements on the Amazon Marketplace.

239.    On at least one occasion, NOCO's advertisements on the Amazon Marketplace were taken down for three to five days.

240.    NOCO estimates that it lost in excess of $100,000 in gross revenue during this advertisement blackout.

241.    Service Defendants not only offer click-farm services to Merchant Defendants but other unnamed competitors as well as NOCO.

242.    Companies also approached NOCO via email and solicited NOCO with a QR code that would have given NOCO access to more than 1,900 click farms.[7] *See* Figure 48 below.



243.    Merchant Defendants use these services to harm NOCO and other honest competitors—not only in sales but also in goodwill and reputation in the Amazon Marketplace and retail stores across the country.

244.    The data, as determined by every available source, including third-party software, shows that Defendants are manipulating and abusing the Amazon Marketplace in order to harm NOCO.

_____

[7] Despite the exercise of due diligence, NOCO could not determine the identity of the actors soliciting click farms to NOCO.

245.    NOCO, and other honest actors in the Amazon Marketplace, cannot afford to sit idly by while Defendants siphon revenue, drive up advertisement costs, and conspire to drive out and disparage competitors, including NOCO.

246.    Defendants' abuse, manipulation, and deceptive trade practices have significantly harmed NOCO.

## CLAIM ONE

### (Violations of the Lanham Act, 15 U.S.C. § 1125(a)(1))

247.    NOCO hereby incorporates each and every preceding paragraph as if fully restated herein.

248.    NOCO sells its products to consumers across the United States and does so by, among other means, selling its products on the Amazon Marketplace.

249.    NOCO's competitors, Merchant Defendants, also sell their products to United States consumers via the Amazon Marketplace.

250.    Service Defendants provide fraudulent, false, and inaccurate review and rating services and click farm services on the Amazon Marketplace to Merchant Defendants.

251.    Merchant Defendants utilize Service Defendants' fraudulent review services, incentivize its own customers to write inaccurate, false, or misleading product reviews and ratings, and/or directly provide false and misleading reviews and ratings, concerning Merchant Defendants' products and NOCO's products.

252.    Defendants' false product reviews, ratings, and descriptions confuse, mislead, and deceive the consumer into purchasing or not purchasing a specific product on the Amazon Marketplace.

253.    Defendants' false product reviews, ratings, and descriptions are material to a consumer's decision to purchase a product on the Amazon Marketplace.

254.    The false and misleading product reviews, ratings, and descriptions on NOCO and Merchant Defendants' products cause the products to incorrectly receive the Badge, which materially affects a consumer's decision to purchase the product.

255.    The false and inaccurate product reviews, ratings and descriptions, *inter alia*: (i) cause NOCO to not be awarded the Badge; (ii) constitute representations of fact which misrepresent the nature, characteristics, and qualities of NOCO and its products; and (iii) constitute representations of fact which misrepresent the nature, characteristics, and qualities of the Merchant Defendants' products.

256.    The false and inaccurate product reviews, ratings and descriptions, and the manipulation of the Badge are published on the product page for the public to read and to entice the customer to buy (or not buy) the product.

257.    Amazon Marketplace consumers rely on the product reviews, ratings, and descriptions and the Badge when making purchasing decisions.

258.    Consumers have been misled into purchasing products (or not purchasing products) based on false or misleading Badges and false reviews, ratings, and descriptions.

259.    NOCO has lost a significant amount of sales on the Amazon Marketplace and in big-box retailers as a result of the incorrect Badge placement and false product reviews, ratings, and descriptions.

260.    As a direct and proximate result of Defendants' acts, NOCO suffered and continues to suffer damages in an amount exceeding $75,000.00.

**CLAIM TWO**

**(Violations of Ohio's Unfair Trade Practices Law, O.R.C. § 4165.02)**

261.    NOCO hereby incorporates each and every preceding paragraph as if fully restated herein.

262.    Defendants have disparaged NOCO products, represented that NOCO's and Merchant Defendants' products are of a particular standard, quality, or grade when the products are not, and represented that NOCO's and Merchant Defendants' products have characteristics, uses, or benefits that the products do not have by, *inter alia*: (i) manipulating Amazon's algorithms that award the Badge; (ii) falsifying product reviews and ratings on Merchant Defendants' products and NOCO's products; (iii) describing Merchant Defendants products as having received UL's 2743 safety standard certification; and (iv) creating product reviews specifically designed to incite safety concerns regarding NOCO products.

263.    Defendants have also made false statements of fact about NOCO products and Merchant Defendants' products by, *inter alia*: (i) manipulating Amazon's algorithms that award the Badge; (ii) falsifying product reviews and ratings; and (iii)

describing Merchant Defendants' products as having received UL's 2743 safety standard certification trademark.

264.    Defendants' false product reviews, ratings, and descriptions are misleading, deceive the consumer, and are relied on by consumers when they make their purchasing decisions.

265.    As a direct and proximate result, NOCO has suffered damages and continues to suffer damages in an amount exceeding $75,000.00.

## CLAIM THREE
### (Tortious Interference with a Business Relationship)

266.    NOCO hereby incorporates each and every preceding paragraph as if fully rewritten herein.

267.    NOCO and Amazon were and currently are engaged in a business relationship through PPC advertisement agreements.

268.    Defendants knew of the business relationship and advertisement agreements between NOCO and Amazon because they are aware that NOCO actively advertises and sells on the Amazon Marketplace and because Defendants had the opportunity to enter into similar agreements with Amazon regarding PPC advertisements.

269.    Despite this knowledge, Defendants intentionally interfered with NOCO and Amazon's business relationship.

270.    Defendants improperly interfered with NOCO and Amazon's business relationship when they engaged in the above-described conduct, including utilizing click

farms to drive up NOCO's advertising costs and falsifying product reviews, ratings, and descriptions.

271.    As a direct and proximate result of Defendants' interference, NOCO has suffered and will continue to suffer damages in an amount exceeding $75,000.00.

## CLAIM FOUR
### (Trade Libel)

272.    NOCO hereby incorporates each and every preceding paragraph as if fully rewritten herein.

273.    Defendants manipulate and abuse the Amazon Marketplace such that false product reviews and ratings about NOCO's products are published on the Amazon Marketplace for consumers to read.

274.    Defendants either author the false product reviews and ratings themselves or cause others to falsely rate and review NOCO products.

275.    Defendants' product reviews and ratings published regarding NOCO products, *inter alia*: (i) relate to the quality of NOCO's products; (ii) damage NOCO's brand and reputation; and (iii) are false representations of fact.

276.    As a direct and proximate cause of Defendants' abuse and manipulation of the Amazon Marketplace, NOCO has suffered and will continue to suffer damages in an amount exceeding $75,000.00.

## CLAIM FIVE
### (Civil Conspiracy)

277.    NOCO hereby incorporates each and every preceding paragraph as if fully restated herein.

278.    Defendants have entered into a malicious combination—among Merchant Defendants and Service Defendants—in a way not competent for one alone by acting in concert and/or agreeing to manipulate the Amazon Marketplace.

279.    Defendants harmed NOCO by, *inter alia*: (i) manipulating Amazon's algorithms to incorrectly assign the Badge; (ii) conspiring to author and publish false product reviews and ratings; and (iii) fraudulently increasing NOCO's advertising costs.

280.    As a direct and proximate cause of Defendants' acts, NOCO has suffered and will continue to suffer damages in an amount exceeding $75,000.00.

**WHEREFORE,** NOCO prays for judgment as follows:

A.      A preliminary and permanent injunction;

B.      As to Claim One, compensatory damages, statutory damages, attorneys' fees and costs;

C.      As to Claim Two, compensatory damages, statutory damages, attorneys' fees and costs;

D.      As to Claim Three, compensatory damages, punitive damages, attorneys' fees, and costs;

E.      As to Claim Four, compensatory damages, punitive damages, attorneys' fees, and costs;

F.      As to Claim Five, compensatory damages, punitive damages, attorneys' fees, and costs;

G.      Attorneys' fees and costs, as allowed by statute and for Defendants' acts; and

H.      Such other relief as this Court deems just and proper.

## JURY DEMAND

NOCO respectfully demands a trial by jury pursuant to Fed. R. Civ. P. 38.

*/s/ Jon J. Pinney*
JON J. PINNEY (0072761)

Respectfully Submitted,

**KOHRMAN JACKSON & KRANTZ LLP**

*/s/ Jon J. Pinney*

JON J. PINNEY (0072761)
JON W. GROZA (0083985)
One Cleveland Center, 29th Floor
1375 East Ninth Street
Cleveland, Ohio 44114-1793
Telephone: (216) 696-8700
Facsimile: (216) 621-6536
Email: jjp@kjk.com; jwg@kjk.com

*Counsel for Plaintiff The NOCO Company*